[File No. Cr. 187]

STATE OF NORTH DAKOTA, Respondent, v. CARL M. RITTER, Appellant.

(9 NW (2d) 270)

Opinion filed April 19, 1943.

*J. K. Murray,* for appellant.

*Alvin C. Strutz,* Attorney General, and *A. O. Ginnow,* State's Attorney, for respondent.

CHRISTIANSON, J. The defendant was convicted of the crime of embezzlement and has appealed from the judgment of conviction and from an order denying his motion for a new trial.

The only question presented and argued on the appeal relates to the sufficiency of the evidence. The defendant contends that the verdict is clearly against the evidence and that the trial court erred in refusing to set aside the verdict.

The criminal information on which prosecution is based charges that on August 8, 1938, the defendant, as the agent of the Investors Service Corporation, collected $100 for rent for the said Investors Service Corporation and that the defendant wilfully, unlawfully, fraudulently and feloniously appropriated said moneys to a use and purpose not in the due and lawful execution of his duty as such agent.

The evidence shows that the defendant is engaged in the business of renting and selling lands in the vicinity of Wishek in this state. The Investors Service Corporation of Minneapolis, Minnesota had been employed by the owner of certain lands in Logan county in this state to rent or sell such lands. One Muralt, a field man of said Investors Service Corporation, was acquainted with the defendant and in the summer of 1938 he informed the defendant that he (Muralt) was trying to sell or rent a certain tract of land in Logan county. They

had some conversation regarding the matter and as a result they both drove out to see one Schumacher. Schumacher was unwilling to buy the land but he agreed to rent it for the farming season of 1939. Arrangements were made to that effect. A written lease was to be made and Schumacher was to pay in all, $150 in cash.

Schumacher paid the defendant Ritter $50 on that day and Ritter delivered to him a written receipt therefor. Thereafter a written lease was prepared by the Investors Service Corporation and mailed from its office in Minneapolis to the defendant Ritter. Ritter presented the lease to Schumacher for execution on August 13, 1938, and Schumacher on that day paid him $100 in cash and Ritter executed and delivered to Schumacher a receipt therefor.

Evidence adduced upon the trial showed that Schumacher purchased a 720-acre tract of land from the Investors Service Corporation; and the defendant contends that he became entitled to a commission of $1 per acre for the land so purchased by Schumacher, or $720 in all. (This was not the tract of land for which the defendant Ritter collected rent in 1938.) Ritter does not claim that he negotiated the sale but says that he in effect procured the purchaser and hence became entitled to be compensated.

There is some controversy as to whether all the $150 was to be paid for rent or whether only $100 was to be paid for rent and the remaining $50 was to be paid to the defendant Ritter by Schumacher for Ritter's services in procuring a lease of the land.

The testimony of the defendant tends to support the contention that the entire $150 was paid as rent for the land; also that there was a promise on the part of Muralt that the defendant Ritter would be paid a commission of $1 per acre in the event he made a sale of the 720-acre tract.

The testimony of Muralt, however, is directly to the contrary. He testified that there was no agreement or understanding relating to the sale of the 720-acre tract. He also testified that the Investors Service Corporation was to receive only $100 for rent for the land that was rented to Schumacher; that the remaining $50 belonged to Ritter, and that the Investors Service Corporation had no interest therein. According to the evidence, the sale of the 720-acre tract of land was not

made until in 1941, or more than one year after the defendant had been arrested.

The criminal complaint was sworn to by Muralt and defendant's counsel argues that the fact that in such complaint the defendant is charged with embezzlement of $100 tends to support the contention that the defendant earned a commission for the sale of the 720-acre tract, and that Muralt and the Investors Service Corporation must have intended to allow Ritter $50 as compensation for his services incident to the sale of the land.

There was offered in evidence certain correspondence between the defendant on one hand and Muralt and the Investors Service Corporation on the other. The first communication is from the defendant to Muralt, dated December 5, 1938. The next in point of time is a letter from the defendant to Muralt, dated January 6, 1939. In both of these communications reference is made to Ritter's effort to obtain money to "straighten up" a certain matter. In the second communication Ritter refers to a loan that he is attempting to make and says that the loan "is supposed to close not later than the 25th of this month. So wish that they would withhold the action against me and I shall send them every cent that they have coming." Other letters followed from the Investors Service Corporation to the defendant dated respectively: February 20th, March 24th, April 11th, May 11th, and June 27th, and Ritter's replies to such letters. In most of Ritter's letters he refers to a loan from which he will obtain the money necessary to make payment. In all of such letters there is a recognition that Ritter is indebted to the Investors Service Corporation. However, defendant's counsel asserts that these letters were written before Ritter had any knowledge that the Investors Service Corporation had sold the land.

The evidence was sufficient to justify the jury in concluding, as it must have done. that the defendant, as agent for the Investors Service Corporation, collected $100 from Schumacher for the Investors Service Corporation; that these moneys belonged to the Investors Service Corporation and that the defendant had no interest therein at all; that while such moneys were in his control he converted them to a use or purpose not in the due and lawful execution of his trust, i.e., he converted them

to his own use, in violation of § 9933, Comp. Laws 1913. The defendant does not deny that he appropriated the money to his own use. He testified that he deposited the moneys in his personal bank account; that he drew checks on such account in payment of bills; and that later he discovered that the account was overdrawn. The trial court seems to have been of the view, however, that although the verdict was sustained by the evidence, valid reasons existed for extending clemency; for at the time sentence was pronounced the trial court stated that upon showing being made that the defendant had made restitution of the moneys embezzled, the trial court would recommend to the pardon board that defendant be paroled after serving a relatively short portion of the sentence.

The defendant has been a resident of, and has been engaged in business in, the community where he now resides for a long period of time. He has never been arrested or charged with the commission of crime, prior to the prosecution here. He has a large family dependent upon him for support. He apparently made strenuous efforts to procure the necessary funds to restore the moneys which he had appropriated. He sought to raise the moneys by giving a mortgage upon his home, but was unable to make the loan.

Upon the oral argument it was stated by appellant's counsel that restitution has been made, and that the $100 has been paid to the Investors Service Corporation—although counsel further asserted that the defendant still claims he is entitled to recover from the Investors Service Corporation compensation for procuring a purchaser for the land.

The sentence never went into operation. The defendant had been admitted to bail before the trial, and he was not in the custody of the sheriff during the trial or at the time sentence was pronounced. The judgment of conviction recites that the defendant has given notice of appeal, and provides that he be admitted to bail during the pendency of the appeal. The trial judge granted a certificate of probable cause, bail was furnished as directed by the trial judge, and the execution of the judgment was stayed. Comp Laws 1913, §§ 10,999, 11,115, 11,116.

In the circumstances we believe that the ends of justice will be best subserved by reserving to the district court authority to resentence the defendant in light of the facts as they now exist. Accordingly the judg-

ment and the order appealed from are affirmed, but without prejudice to the district court making an order setting aside the judgment of conviction, and thereafter resentencing the defendant.

MORRIS, Ch. J., and BURR, NUESSLE, and BURKE, JJ., concur.